**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JEFFREY R. GAHLER, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | |
| WES MOORE, Governor, in his official capacity, *et al.*, | * | Case No. 1:26-cv-02057 |
| | * | |
| Defendants. | * | |
| | * | |

*   *   *   *   *   *   *   *   *   *   *   *

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS


INTRODUCTION ... 1

BACKGROUND ... 2

I. Maryland's Community Trust Act ... 2

II. Procedural History ... 5

LEGAL STANDARDS ... 6

ARGUMENT ... 8

I. Numerous Threshold Defects Preclude Plaintiffs' Claims. ... 8

A. Plaintiffs Lack Article III Standing. ... 8

B. Plaintiffs Lack Capacity under Maryland Law to Bring this Suit. ... 15

C. Plaintiffs Have No Viable Cause of Action Against Any Defendant. ... 16

D. Plaintiffs Cannot Assert the Federal Government's Intergovernmental Immunity Interests. ... 19

II. Plaintiffs' Claims Fail as a Matter of Law. ... 19

A. The Community Trust Act Is Not Preempted by Federal Law. ... 19

1. No Federal Law Expressly Preempts the Community Trust Act. ... 20

2. The Community Trust Act is Not an Unconstitutional Obstacle to Federal Immigration Enforcement. ... 22

3. The Community Trust Act Is Not Impossibly in Conflict with Federal Law. ... 25

B. The Community Trust Act Does Not Directly Regulate the Federal Government. ... 26

III. Plaintiffs Fail to Establish Other Requirements for a Preliminary Injunction. ... 29

A. Plaintiffs Have Not Established Irreparable Harm. ... 29

B. The Balance of Equities and the Public Interest Weigh in Defendants' Favor. ... 29

IV. Any Preliminary Relief Granted Should Be Strictly Limited to Plaintiffs who Have Established Particularized Injury. ... 30

CONCLUSION ... 30

## TABLE OF AUTHORITIES

### Cases

*Adams Outdoor Advert. Ltd. P'ship v. Beaufort Cnty.*, 105 F.4th 554 (4th Cir. 2024)................ 6, 8

*Allen v. Wright*, 468 U.S. 737 (1984)........................................................................... 19

*Am. Petroleum Inst. v. Cooper*, 718 F.3d 347 (4th Cir. 2013)...................................................... 22

*Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531 (1987) ........................................................ 30

*Arizona v. United States*, 567 U.S. 387 (2012) .............................................................. 20, 23, 24

*Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015)............................................. 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................................... 7

*Avery v. Burke Cnty.*, 660 F.2d 111 (4th Cir. 1981)..................................................................... 15

*Baltimore Cnty. v. Churchill, Ltd.*, 313 A.2d 829 (Md. 1974) ..................................................... 16

*Board of Education v. Allen*, 392 U.S. 236 (1968) ............................................................... 14, 15

*Bd. of Educ. of Prince George's Cnty. v. Sec'y of Pers.,* 562 A.2d 700 (Md. 1989)..................... 16

*Buchanan v. Warley*, 245 U.S. f60 (1917)..................................................................................... 25

*Chamber of Commerce of the United States v. Whiting*, 563 U.S. 582 (2011) ............................ 23

*Chappell v. Southern Maryland Hosp., Inc.*, 578 A.2d 766 (Md. 1990)....................................... 22

*City of El Cenizo v. Texas*, 890 F.3d 164 (5th Cir. 2018) ............................................................ 24

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ..................................................................... 8

*CoreCivic, Inc. v. Governor of New Jersey*, 145 F.4th 315 (3d Cir. 2025) .................................. 26

*Cnty. of Ocean v. Grewal*, 475 F. Supp. 3d 355 (D.N.J. 2020) .................................................... 22

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000)...................................................... 23

*Di Biase v. SPX Corp.*, 872 F.3d 224 (4th Cir. 2017) ................................................................. 29

*Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802 (4th Cir. 1991)............................... 7

*Doyle v. Hogan*, 1 F.4th 249 (4th Cir. 2021) .......... 17, 18

*Drake v. Obama*, 664 F.3d 774 (9th Cir. 2011) .......... 14

*Duckworth v. Deane*, 903 A.2d 883 (Md. 2006) .......... 15, 16

*Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1 (2004) .......... 19

*English v. General Electric Co.*, 496 U.S. 72 (1990) .......... 25

*Ensminger v. Comm'r of Internal Revenue*, 610 F.2d 189 (4th Cir. 1979) .......... 25

*Ex parte Young*, 209 U.S. 123 (1908) .......... 1, 17

*Finch v. Miss. State Med. Ass'n, Inc.*, 585 F.2d 765 (5th Cir. 1978) .......... 14

*Frank Krasner Enters., Ltd. v. Montgomery Cnty.*, 401 F.3d 230 (4th Cir. 2005) .......... 9

*Genesis GSA Strategic One, LLC v. Howard County*,
No. 26-cv-915, 2026 WL 2294479 (D. Md. Aug. 10, 2026) .......... 28

*Guzman v. Acuarius Night Club LLC*, 167 F.4th 217 (4th 2026) .......... 7

*Hancock v. Train*, 426 U.S. 167 (1976) .......... 27

*Henderson v. Bluefield Hosp. Co., LLC*, 902 F.3d 432 (4th Cir. 2018) .......... 7

*Holmes v. Elephant Ins. Co.*, 156 F.4th 413 (4th Cir. 2025) .......... 8, 9

*Johnson v. State of Maryland*, 254 U.S. 51 (1920) .......... 27, 28

*KalshiEX LLC v. Martin*, 793 F. Supp. 3d 667 (D. Md. 2025) .......... 23

*Kearns v. Cuomo*, 415 F. Supp. 3d 319 (W.D.N.Y. 2019),
*aff'd*, 981 F.3d 200 (2d Cir. 2020) .......... 14

*King v. Youngkin*, 122 F.4th 539 (4th Cir. 2024) .......... 18

*LaFave v. County of Fairfax*, 149 F.4th 476 (4th Cir. 2025) .......... 11, 12

*Lane v. Holder*, 703 F.3d 668 (4th Cir. 2012) .......... 10

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .......... 8, 10

*Maryland v. King*, 567 U.S. 1301 (2012) .......... 30

*Maryland v. Noem*, 823 F. Supp. 3d 560 (D. Md. 2026) .......... 7

*Maryland Shall Issue, Inc. v. Hogan*, 971 F.3d 199 (4th Cir. 2020) ............................10, 11, 12, 13

*Mayor of Baltimore v. State ex rel. Bd. of Police*, 15 Md. 376 (1860)........................................... 1

*McBurney v. Cuccinelli*, 616 F.3d 393 (4th Cir. 2010) ......................................................... 17, 18

*McHenry Cnty. v. Raoul*, 44 F.4th 581 (7th Cir. 2022) ............................................................... 28

*Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299 (2019) ........................................... 25, 26

*Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197 (4th Cir. 2019) ............. 7, 29

*Murthy v. Missouri*, 603 U.S. 43 (2024) ........................................................................... 7, 8, 9

*Murphy v. National Collegiate Athletic Association*, 584 U.S. 453 (2018)................ 20, 21, 24, 30

*Nat'l Shooting Sports Found. v. Att'y Gen. of New Jersey*, 80 F.4th 215 (3d Cir. 2023)...............11

*New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345 (1977) ........................................... 30

*New York v. United States*, 505 U.S. 144 (1992)......................................................................... 20

*North Dakota v. United States*, 495 U.S. 423 (1990)....................................................... 19, 26, 28

*Ocean Cnty. Bd. of Comm'rs v. Att'y Gen. of New Jersey*, 8 F.4th 176 (3d Cir. 2021) .......... 21, 22

*Penn Dairies, Inc. v. Milk Control Commission of Pa.*, 318 U.S. 261 (1943) ............................. 27

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139 (1993) ................. 18

*Reyes v. Waples Mobile Home Park Ltd.*, 91 F.4th 270 (4th Cir. 2024),
*cert. denied*, 145 S. Ct. 172 (2024) ............................................................................................ 13

*Robinson v. Nat'l Collegiate Athletic Ass'n*, 172 F.4th 271 (4th Cir. 2026) .................................. 7

*Rucker v. Harford Cnty.*, 558 A.2d 399 (Md. 1989)............................................................... 6, 16

*Southern Blasting Services v. Wilkes Cnty., NC*, 288 F.3d 584 (4th Cir. 2002) ...................... 25, 26

*Salomon & Ludwin, LLC v. Winters*, 150 F.4th 268 (4th Cir. 2025)............................................... 7

*Singleton v. Maryland Tech. & Dev. Corp.*, 103 F.4th 1042 (4th Cir. 2024)................................ 17

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ...................................................8, 11, 14

*Texas v. Department of Homeland Security*, 123 F.4th 186 (5th Cir. 2024) ................................ 28

*Texas v. Ysleta del Sur Pueblo*, 79 F. Supp. 2d 708 (W.D. Tex. 1999) ... 15

*Trump v. CASA, Inc.*, 606 U.S. 831 (2025) ... 30

*United States v. California*, 921 F.3d 865 (9th Cir. 2019) ... 22

*United States v. Illinois*, 796 F. Supp. 3d 494 (N.D. Ill. 2025) ... 21, 28

*United States v. New York*, 810 F. Supp. 3d 329 (N.D.N.Y. 2025). ... 24, 28

*United States v. New York*, 814 F. Supp. 3d 266 (N.D.N.Y. 2025). ... 22

*United States v. Washington*, 596 U.S. 832 (2022) ... 19, 26

*Warth v. Seldin*, 422 U.S. 490 (1975) ... 19

*Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316 (4th Cir. 2001) ... 18

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ... 7, 29, 30

**Constitutional Provisions**

U.S. Const. amend. X ... 2, 24, 27

Md. Const. art. IV, § 44 ... 1

Md. Const. art. V, § 3 ... 15

**Statutes**

8 U.S.C. § 1182 ... 23

8 U.S.C. § 1226 ... 23

8 U.S.C. § 1231 ... 23

8 U.S.C. § 1373 ... 4, 6, 20, 21, 22

8 U.S.C. § 1644 ... 6, 20, 21, 22

Md. Code Ann., Corr. Servs. § 8-805 ... 4, 5, 11, 12, 18

Md. Code Ann., Crim. Proc. § 5-104 ... 3, 4

Md. Code Ann., Crim. Proc. § 5-201.1 ... 4

Md. Code Ann., State Gov't § 6-106 .......................................................................... 15, 16

2026 Md. Laws, ch. 872, S.B. 791, 2026 Leg., Reg. Sess. (enrolled bill)...................................... 2

2017 Cal. Legis. Serv. Ch. 495 ........................................................................................ 14

2013 Conn. Legis. Serv. 13-155........................................................................................ 14

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................................ 6, 8

Fed. R. Civ. P. 12(b)(6) ................................................................................... 6, 7, 15, 19

Fed. R. Civ. P. 17................................................................................................... 1, 15

**Miscellaneous Authorities**

6A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1542 (3d ed. 2010) ....... 15

BJA FY 2024 State Criminal Alien Assistance Program (SCAAP) Award Details, Bur. of Just. Assistance, https://bja.ojp.gov/funding/scaap-fy24-awards.pdf ................................................ 9

*Community Trust Act: Hearing on S.B. 791 Before the S. Comm. on Judicial Proceedings*, 2026 Leg., Regular Sess. (Md. 2026) (letter from Md. State Bar Ass'n), https://mgaleg.maryland.gov/cmte_testimony/2026/jpr/1b24OnS-wHBBbdk1DZDP2vX0pBH2V922X.pdf ................................................................... 10

Floor Report, Senate Jud. Proc. Comm., S.B. 791, 2026 Leg., Reg. Sess. .............................. 4, 22

Md. Off. of the Att'y Gen., *Guidance Memorandum: Local Enforcement of Federal Immigration Law: Legal Guidance for Maryland State and Local Law Enforcement Officials* (updated June 2026), https://oag.maryland.gov/FederalActionsResponse/Documents/pdfs/Law%20Enforcement%20Immigration%20Guidance%2006.22.2026%20Update%20%28FINAL%29.pdf ............ passim

Revised Fiscal & Policy Note, S.B. 791, 2026 Leg., Reg. Sess. at 3 (May 4, 2026) ............... 4, 22

## INTRODUCTION

Maryland's sheriffs are State constitutional officers whose duties and responsibilities are defined by the common law and the Maryland General Assembly. Md. Const. art. IV, § 44 (sheriffs "shall . . . exercise such powers and perform such duties as now are or may hereafter be fixed by law"); *Mayor of Baltimore v. State ex rel. Bd. of Police*, 15 Md. 376, 379 (1860) ("The Constitution mentions the office of Sheriff, and provides for filling it, but does not specify or describe his powers or duties; these are left to the common law and the Acts of Assembly and may be changed by law."). The Assembly exercised its authority over the duties of sheriffs when it enacted the Community Trust Act, defining the limited role of Maryland law enforcement and correctional officers in assisting the federal government with its immigration enforcement responsibilities. Plaintiffs, sheriffs for various Maryland jurisdictions, filed this action challenging the lawfulness of the Act and now, three months later, they seek emergency relief, claiming to be irreparably harmed by the law. Though Plaintiffs may have preferred that the General Assembly adopt a different policy, such a disagreement does not give them cognizable claims for judicial relief.

A host of threshold defects independently require denial of Plaintiffs' preliminary injunction motion and dismissal of their claims. First, Plaintiffs have not established Article III standing because, among other things, their asserted injuries depend on a series of speculative and contingent events that they have not shown are actual or imminent. Second, Plaintiffs lack capacity to sue, required by Federal Rule of Civil Procedure 17, because Maryland law does not authorize them to privately litigate interests arising from their official duties, and no exception to that rule permits them to do so here. Apart from these defects, Plaintiffs invoke the Supremacy Clause as the source of their claims, but it provides no private right of action. Nor does *Ex parte Young*, 209 U.S. 123 (1908), provide a vehicle for Plaintiffs to pursue their claims because the State is not a

proper defendant under *Ex parte Young*; the Governor lacks sufficient duty to enforce the law; and the Attorney General has not begun, or threatened to begin, any proceedings enforcing the law.

Even if Plaintiffs could overcome these deficiencies, which they cannot, their Supremacy Clause claims fail as a matter of law. First, the Community Trust Act is not expressly preempted because no federal statute requires, or could lawfully require, Maryland to furnish the assistance that the Act limits. Second, the Community Trust Act is not an unlawful obstacle to federal immigration enforcement, which federal officers remain free to carry out in Maryland using the authority Congress has conferred upon them. Third, Plaintiffs cannot establish impossibility preemption because compliance with both federal law and the Community Trust Act is feasible. Finally, because the Community Trust Act governs only the conduct of Maryland's state and local officials and the use of state resources, it does not directly regulate the federal government.

The General Assembly made lawful policy choices to regulate state and local officers in the manner it determined would promote public safety, protect individual rights, and foster community trust. The Court should reject Plaintiffs' efforts to displace those legislative judgments, which are grounded in the Assembly's authority under the Tenth Amendment. *See* U.S. Const. amend. X. Plaintiffs' emergency motion should be denied and their claims dismissed.

## BACKGROUND

### I. Maryland's Community Trust Act

On April 13, 2026, the Maryland General Assembly passed Senate Bill 791, the Community Trust Act, and the law took effect on May 31, 2026. 2026 Md. Laws, ch. 872, S.B. 791, 2026 Leg., Reg. Sess. (enrolled bill). The Act amended Maryland Code of Criminal Procedure § 5-104 and Correctional Services § 8-805, and added Criminal Procedure § 5-201.1.

The Community Trust Act establishes statewide standards governing the circumstances under which Maryland's state and local law enforcement officials and correctional employees may participate in federal immigration enforcement. In June 2026, Maryland Attorney General Anthony G. Brown released updated guidance outlining officers' responsibilities under state law, including provisions modified by the Act. *See generally* Md. Off. of the Att'y Gen., *Guidance Memorandum: Local Enforcement of Federal Immigration Law: Legal Guidance for Maryland State and Local Law Enforcement Officials* (updated June 2026) (hereinafter "AG Guidance").[1]

Section 5-104 of the Criminal Procedure Article of the Maryland Code, as amended by the Community Trust Act, provides the contours of how state and local law enforcement officers (other than correctional officers) generally may assist in enforcing federal immigration law. It does not bar these officers from collaborating with federal immigration authorities on criminal investigations, including those undertaken through a joint task force. *See* Md. Code Ann., Crim. Proc. § 5-104(b)(3) ("Nothing in this subsection shall prevent a law enforcement agent from inquiring about any information that is material to a criminal investigation."); *see also AG Guidance* at 4. Section 5-104 also does not bar Maryland law enforcement from responding to requests for information related to criminal trafficking or smuggling investigations. *See id.* at 4.

Section 5-104 provides that a state or local "law enforcement agent may not, during the performance of regular police functions" "inquire about an individual's citizenship, immigration status, or place of birth during a stop, a search, or an arrest"; "detain, or prolong the detention, of an individual" where the purpose of the extension is suspicion that the individual may have committed a civil immigration violation or to investigate citizenship or immigration status;

[1] The Guidance is available at https://oag.maryland.gov/FederalActionsResponse/Documents/pdfs/Law%20Enforcement%20Immigration%20Guidance%2006.22.2026%20Update%20%28FINAL%29.pdf.

"transfer an individual to federal immigration authorities unless required by federal law"; "coerce, intimidate, or threaten any individual based on the actual or perceived citizenship or immigration status of the individual" or their family member, legal guardian, or someone whom they serve as a guardian; or provide federal immigration authorities with "information about an individual obtained in the course of the law enforcement agent's duties unless required by a valid court order." Md. Code Ann., Crim. Proc. § 5-104(b)(2); *see also AG Guidance* at 3–5. "[T]he Maryland General Assembly has thus far chosen to align State law with the principles contained in [8 U.S.C.] § 1373," meaning law enforcement officers may receive or send only citizenship or immigration status information. *AG Guidance* at 3; *see also* Revised Fiscal & Policy Note, S.B. 791, 2026 Leg., Reg. Sess. at 3 (May 4, 2026) ("[F]ederal law does prohibit a state or local government from prohibiting or in any way restricting any government entity or official from sending or receiving from ICE information regarding citizenship or immigration status, lawful or unlawful, of any individual."); Floor Report, Senate Jud. Proc. Comm., S.B. 791, 2026 Leg., Reg. Sess. at 3.

Section 5-201.1 of the Criminal Procedure Article provides that "immigration detainer" has the same meaning as in Section 8-805 of the Correctional Services Article. Md. Code Ann., Crim. Proc. § 5-201.1(a). This provision also sets out that a District Court commissioner or a judge may consider the existence of an immigration detainer when deciding whether to authorize pretrial release or set bond or bail for a defendant charged with a felony. *Id.* § 5-201.1(b).

For state and local correctional facilities, Section 8-805 of the Correctional Services Article, as amended by the Community Trust Act, provides that they may not coerce, intimidate, or threaten a person based on actual or perceived immigration status. Md. Code Ann., Corr. Servs. § 8-805(d); *see also AG Guidance* at 8. Where an incarcerated individual is the subject of a certain type of immigration detainer (one supported by a Form I-205 administrative removal warrant),

Maryland law requires a state correctional facility to notify federal immigration authorities "within 48 hours before the release of the individual." Md. Code Ann., Corr. Servs. § 8-805(c)(2); *see also AG Guidance* at 8. Further, if any incarcerated individual is subject to a different type of immigration detainer, a state facility may voluntarily provide advance release notification but is not required to do so. *See AG Guidance* at 8.

For individuals without certain criminal convictions, *see* Md. Code Ann., Corr. Servs. § 8-805(a)(4) (defining "convicted individual"), local correctional facilities may not inquire about or investigate citizenship or immigration status, except where the information is material to a routine booking procedure; detain or prolong a detention for the purpose of investigating citizenship or immigration status or based on suspicion that the individual has committed a civil immigration violation, including at the request of federal immigration authorities unless presented with a valid judicial warrant; notify federal immigration authorities that an individual is in custody, unless required by a valid court order or judicial warrant; or transfer an individual to federal immigration authorities, absent a valid judicial warrant. *Id*. § 8-805(b); *see also AG Guidance* at 7–8.

Section 8-805(e) provides that "[t]he Attorney General or an individual who has been subjected to a violation of this section may bring a civil action to enforce this section." *Id.* § 8-805(e)(1). In such an action, "the court may issue temporary, preliminary, or permanent injunctive relief to prevent an act that would constitute a violation of this section." *Id.* § 8-805(e)(2).

## II. Procedural History

On May 26, 2026, Plaintiffs filed the present lawsuit against Defendants Governor Wes Moore, Attorney General Anthony G. Brown, and the State of Maryland, challenging the constitutionality of the Community Trust Act. Plaintiffs, however, did not serve the Complaint until August 11, 2026. *See* Executed Summons, ECF No. 13. Plaintiffs are sheriffs of Harford,

Cecil, Washington, Caroline, Calvert, Worcester, Carroll, Talbot, St. Mary's, Kent, Queen Anne's, Somerset, Frederick, Wicomico, Garrett, Dorchester, and Allegany Counties, all of which are political subdivisions of the State of Maryland. Plaintiffs are State employees with duties subject to the control of the Maryland General Assembly. *See Rucker v. Harford Cnty.*, 558 A.2d 399, 402 (Md. 1989) ("[S]heriffs are State rather than local government employees."). They assert that the Act is expressly preempted, creates an unconstitutional obstacle to federal objectives, and violates principles of intergovernmental immunity. On August 11, almost three months after filing their complaint, Plaintiffs moved for a preliminary injunction. Pls.' Prelim. Inj. Mots., ECF No. 7, 8.

Pending separately before this Court is a lawsuit filed by the United States on July 9, 2026, against Defendants State of Maryland and Attorney General Anthony G. Brown. *See United States v. Maryland*, No. 26-cv-2719 (D. Md.), ECF No. 1. The United States brings Supremacy Clause claims, asserting that the Community Trust Act is expressly preempted by 8 U.S.C. §§ 1373 and 1644; stands as an unconstitutional obstacle to immigration enforcement; and violates intergovernmental immunity principles. On August 14, 2026, Defendants moved to dismiss the United States's Complaint. *United States v. Maryland*, No. 26-cv-2719 (D. Md.), ECF No. 5.

## LEGAL STANDARDS

Defendants move to dismiss Plaintiffs' claims for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted. A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction where the plaintiff lacks Article III standing. *Adams Outdoor Advert. Ltd. P'ship v. Beaufort Cnty.*, 105 F.4th 554, 564 (4th Cir. 2024). A court also must dismiss a complaint if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) "presents a pure question of law, which simply inquires whether the complaint alleges sufficient factual

matter, accepted as true, to provide a sufficient basis 'to state a claim to relief that is plausible on its face.'" *Guzman v. Acuarius Night Club LLC*, 167 F.4th 217, 221 (4th 2026) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In assessing a motion under Rule 12(b)(6), a court need not accept legal conclusions set forth in the complaint. *Iqbal*, 556 U.S. at 678.

Additionally, Defendants oppose Plaintiffs' motion for preliminary injunction. "[P]reliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *Salomon & Ludwin, LLC v. Winters*, 150 F.4th 268, 273 (4th Cir. 2025) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 816 (4th Cir. 1991)). When seeking a preliminary injunction, a "plaintiff must make a 'clear showing' that []he is 'likely' to establish each element of standing.'" *Murthy v. Missouri*, 603 U.S. 43, 58 (2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). Plaintiffs must also show (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm if preliminary relief is not granted, (3) the balance of the equities favors them, and (4) an injunction is in the public interest. *Robinson v. Nat'l Collegiate Athletic Ass'n*, 172 F.4th 271, 286 (4th Cir. 2026) (citing *Winter*, 555 U.S. at 20). To establish irreparable harm, plaintiffs "must make a 'clear showing' that [they] will suffer harm that is 'neither remote nor speculative, but actual and imminent.'" *Maryland v. Noem*, 823 F. Supp. 3d 560, 571 (D. Md. 2026) (quoting *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 216 (4th Cir. 2019)). A court should deny plaintiffs' motion if any one factor is not clearly established. *See Henderson v. Bluefield Hosp. Co., LLC*, 902 F.3d 432, 439 (4th Cir. 2018) ("*Winter* made clear that *each* of these four factors must be satisfied to obtain preliminary injunctive relief.").

## ARGUMENT

Numerous threshold defects each independently warrant dismissing Plaintiffs' claims and denying their requested preliminary relief. Because Plaintiffs lack Article III standing, capacity to sue, any viable cause of action, and any basis to assert the federal government's intergovernmental immunity interests, this case should not proceed. Apart from these threshold issues, Plaintiffs' Supremacy Clause claims fail as a matter of law because the Community Trust Act is not preempted by federal law and does not implicate the intergovernmental immunity doctrine. At the very least, Plaintiffs are not entitled to the extraordinary relief of a preliminary injunction because they have not been harmed—let alone irreparably harmed—by the Community Trust Act, and the public interest and balance of the equities cut firmly against their request.

### I. Numerous Threshold Defects Preclude Plaintiffs' Claims.

#### A. Plaintiffs Lack Article III Standing.

The Court should dismiss Plaintiffs' complaint under Rule 12(b)(1) because they lack Article III standing. "To establish standing, a plaintiff must plead facts that allege (1) that he has suffered or imminently will suffer an injury-in-fact which is (2) causally connected to the challenged provisions and (3) capable of being redressed by a favorable outcome in court." *Adams Outdoor Advert. Ltd. P'ship*, 105 F.4th at 564–65 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "An injury sufficient to satisfy Article III must be concrete and particularized and actual or imminent, not conjectural or hypothetical." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). An "actual or imminent" injury is "certainly impending," not "speculative." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013). That is, "'plaintiffs must show a substantial risk that' [the alleged injury] will happen 'in the near future.'" *Holmes v. Elephant Ins. Co.*, 156 F.4th 413, 429 (4th Cir. 2025) (quoting *Murthy*, 603 U.S. at 58).

Plaintiffs allege that the Community Trust Act will cause a loss of federal funding; increase crime in their communities; subject them to civil enforcement of the Act by the Attorney General or by private parties; expose them to federal criminal prosecution, including for harboring criminal aliens; and interfere with their oaths of office. *See* Compl., ECF No. 1, ¶¶ 52–68; Pls.' Prelim. Inj. Mot. at 7–18, ECF No. 8. Plaintiffs identify no concrete facts showing that there is a "substantial risk" that these alleged injuries "will happen 'in the near future,'" *Holmes*, 156 F.4th at 429 (quoting *Murthy*, 603 U.S. at 58), and they otherwise fail to establish Article III standing.

First, Plaintiffs argue that complying with the Act will jeopardize their eligibility for funding under the federal State Criminal Alien Assistance Program ("SCAPP"). Compl. ¶ 63; Pls.' Prelim. Inj. Mot. at 16–17. To start, Plaintiffs are not recipients of SCAAP funds; instead, funding goes to various Maryland counties, who are not parties here. *See* BJA FY 2024 State Criminal Alien Assistance Program (SCAAP) Award Details at 4, Bur. of Just. Assistance, https://bja.ojp.gov/funding/scaap-fy24-awards.pdf (listing Maryland counties receiving SCAAP awards) (last visited Aug. 24, 2026). Loss of federal funding is therefore not a particularized injury to Plaintiffs. Additionally, this harm is purely speculative, and not imminent or actual. Plaintiffs have not pointed to even one instance of the federal government cutting SCAAP funding to any jurisdiction, including those identified as "sanctuary jurisdictions" on a list published more than a year ago. *See* Compl. ¶¶ 61–63. Thus, Plaintiffs have not identified any nonconjectural basis for fearing that the federal government may cut funding for their jurisdictions in the near future.

Moreover, Plaintiffs fail to establish the causation and redressability prongs of standing for their feared loss of funding because "the actions of an independent third party, who [is] not a party to the lawsuit, [stands] between the plaintiff and the challenged actions." *Frank Krasner Enters., Ltd. v. Montgomery Cnty.*, 401 F.3d 230, 235–36 (4th Cir. 2005) (gun-show promotor and exhibitor

failed to establish causation or redressability to challenge county law denying public funding to venues that display and sell guns). Any potential loss of funding "is not directly linked to the challenged law because [] intermediar[ies]"—both the federal government and the counties that receive funding—"stand[] directly between the plaintiffs and the challenged conduct in a way that breaks the causal chain." *Id.* The alleged risk of loss of funding is insufficient to confer standing.

Plaintiffs also allege that "compliance with the Act will increase crime across the state." Compl. ¶ 51. But they cite no evidence for this conclusory assertion, rendering this harm wholly speculative.[2] Nor have Plaintiffs established that any future increase in crime could be fairly traceable to the Community Trust Act, rather than the myriad other factors that affect the decisions of third parties to commit crime. *See Lane v. Holder*, 703 F.3d 668, 673 (4th Cir. 2012) (plaintiffs "face an uphill battle in establishing traceability" where "any injury to the plaintiffs is caused by decisions and actions of third parties not before this court rather than by the laws themselves"). At any rate, Plaintiffs' concerns about crime "establish[] nothing more than 'the impact on plaintiff . . . plainly undifferentiated and common to all members of the public' and therefore is "an impermissible generalized grievance" that is "an inadequate basis on which to grant standing." *Maryland Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 219–20 (4th Cir. 2020) (quoting *Lujan*, 504 U.S. at 575–76) (plaintiffs lacked standing to challenge firearm regulations as ultra vires under Maryland law where they "d[id] not claim to be injured by the specific requirements" and instead "st[ood] in the shoes of all members of the public who happen to disagree with a particular law").

---

[2] Indeed, the General Assembly heard testimony that fostering trust between law enforcement and the communities they serve through community-trust policies encourages residents to report crimes, which in turn assists in solving crime. *See, e.g.*, *Community Trust Act: Hearing on S.B. 791 Before the S. Comm. on Judicial Proceedings*, 2026 Leg., Regular Sess. (Md. 2026) (letter from Md. State Bar Ass'n), https://mgaleg.maryland.gov/cmte_testimony/2026/jpr/1b24OnS-wHBBbdk1DZDP2vX0pBH2V922X.pdf.

Plaintiffs next contend that they face a "real and immediate threat of civil enforcement from the State Attorney General, private individuals, and activist organizations" if they "decline to follow the Act." Compl. ¶ 64; *see also* Pls.' Prelim. Inj. Mot. at 7. But to bring a pre-enforcement challenge, Plaintiffs "must 'allege[] an intention' to do something prohibited by the statute and 'a credible threat of prosecution' under it." *LaFave v. County of Fairfax*, 149 F.4th 476, 485 (4th Cir. 2025) (quoting *Susan B. Anthony List*, 573 U.S. at 159). Here, "Plaintiffs' generalized fears and concerns do not establish an actual and well-founded fear of prosecution." *Id.* To start, Plaintiffs have not identified any way in which they would be personally harmed by a civil enforcement action. The Act contemplates that any civil enforcement action could, at most, result in "temporary, preliminary, or permanent injunctive relief to prevent an act that would constitute a violation of [provisions of the Act]." Md. Code Ann.., Corr. Servs. § 8-805(e). The Act does not contemplate individual liability of any kind. Given the Act's "purely civil nature," the "attenuated risk of enforcement here matters less for Article III standing," and "the same arguments made in the pre-enforcement challenge can be raised as affirmative defenses later." *Nat'l Shooting Sports Found. v. Att'y Gen. of New Jersey*, 80 F.4th 215, 222 (3d Cir. 2023).

Plaintiffs also have not alleged "any concrete intention to (arguably) violate" the Act; thus, there can be no credible threat of prosecution under it. *See Maryland Shall Issue*, 971 F.3d at 218. While Plaintiffs cite various press releases celebrating passage of the Act, *see* Compl. ¶ 65, they identify no pending or impending civil enforcement action. Indeed, they have not alleged any "individual who has been subjected to a violation of [the law]," Md. Code Ann., Corr. Servs. § 8-805(e)(1), rendering their fears of a private enforcement action particularly unfounded. And, while the Attorney General has authority to institute proceedings enforcing the Act, he would first have to determine, based on the particular facts and alleged violations, whether such proceedings are

warranted. Here, where Plaintiffs say they are following the law and no enforcement proceeding has been threatened or initiated, the possibility that the Attorney General might someday determine that proceedings are warranted is too attenuated to establish an imminent threat of enforcement.

Plaintiffs likewise have not alleged a credible or imminent threat of federal criminal prosecution. *See* Compl. ¶ 52–60; Pls.' Prel. Inj. Mot. at 7–17. A credible threat of prosecution "exists if the plaintiff alleges 'fears of [] persecution that are not imaginary or speculative and are actual and well-founded enough to establish that the statute will be enforced against them.'" *LaFave*, 149 F.4th at 485 (quoting *Maryland Shall Issue*, 971 F.3d at 217). Plaintiffs' purported basis for fearing federal criminal prosecution rests on a mistaken premise about what the Act requires and what federal law prohibits. They contend that Maryland correctional facilities will become "hives of harboring," Pls.' Prel. Inj. Mot. at 12, and they are at risk of prosecution under the federal harboring provision, 8 U.S.C. § 1324, because, under their interpretation of the Act, they would have to engage in "evasive tactics" to shield undocumented immigrants whenever ICE is in the vicinity of a correctional facility. Pls.' Prel. Inj. Mot. at 10 (citing Jenkins Dec. ¶ 6(a), 7). But that is not what the Act says, nor is it how the Attorney General has interpreted it.

The Community Trust Act prohibits prolonging an individual's detention solely because federal authorities want the person for a civil immigration violation or because the state or local facility suspects that the person committed such a violation. Md. Code Ann., Corr. Servs. § 8-805(b)(2). And, as to individuals without specified criminal convictions, it also bars local correctional facilities from notifying federal immigration authorities that the person is in custody, unless required by a valid court order or judicial warrant, or transferring the person to federal immigration authorities, absent a valid judicial warrant. *Id.* § 8-805(b). The Attorney General's guidance explains that local facilities may not provide advance notification of a release to facilitate

transfer to federal immigration authorities. AG Guidance at 7. But no provision of law or part of the Attorney General's guidance suggests that officers must rearrange ordinary release times or locations to avoid detection by ICE or take affirmative steps to prevent federal officers from observing or apprehending a person after an ordinary release. Further, Plaintiffs describe needing to modify their existing procedures to comply with the Act, *see, e.g.*, Dec. of Sheriff Brian K. Albert, ¶ 6, ECF No. 7-5, but the prospect of state officials needing to change procedures to comply with new state laws is neither unusual nor itself an Article III injury. Plaintiffs fail to explain how any such changes create any risk of imminent federal criminal prosecution. Properly understood, Plaintiffs can comply with both state and federal law, and complying with state law does not enhance their risk of federal prosecution.

Further, Plaintiffs have not alleged any facts that would "support a credible threat of prosecution" under federal law. *Maryland Shall Issue*, 971 F.3d at 218. They identify no threat of prosecution of any kind directed at any Plaintiff for conduct undertaken in enforcing the Act. *See* Compl. ¶ 52–60; Pls.' Prel. Inj. Mot. at 7–17. Instead, they cite a smattering of cases involving officials who took affirmative, knowing steps to conceal unlawfully present individuals. *See* Pls.' Prel. Inj. Mot. at 13–15. This is insufficient to establish a credible threat of prosecution for the wholly different scenario of complying with state law. Also, under Fourth Circuit precedent, the criminal harboring "statute only applies to those who *intend* in some way to aid an undocumented immigrant in hiding from the authorities." *Reyes v. Waples Mobile Home Park Ltd.*, 91 F.4th 270, 277 (4th Cir. 2024) (emphasis added), *cert. denied*, 145 S. Ct. 172 (2024). Plaintiffs fail to show how simply complying with the Act could meet this mens rea requirement.

Plaintiffs point to general statements from the federal administration about pursuing "all necessary legal remedies and enforcement measures" against jurisdictions that obstruct federal

immigration enforcement, but it is notable that Plaintiffs have not identified a single instance of a state official being prosecuted for complying with a similar state law, notwithstanding the fact that other jurisdictions have had similar laws on the books for over a decade. *See, e.g.*, 2017 Cal. Legis. Serv. Ch. 495; 2013 Conn. Legis. Serv. 13-155. Plaintiffs' theory of injuries is far removed from cases such as *Susan B. Anthony List v. Driehaus*, where plaintiffs alleged "circumstances that render the threatened enforcement sufficiently imminent." 573 U.S. at 159. Plaintiffs' fears of criminal prosecution are "imaginary" and insufficient for Article III standing. *See, e.g.*, *Kearns v. Cuomo*, 415 F. Supp. 3d 319, 330 (W.D.N.Y. 2019) (holding that a county clerk lacked standing to challenge New York's "Green Light Law" where plaintiff could not "identif[y] a non-speculative scenario in which Plaintiff could plausibly anticipate being criminally prosecuted under § 1324," the federal statute prohibiting harboring), *aff'd*, 981 F.3d 200 (2d Cir. 2020).

Finally, relying on a footnote in *Board of Education v. Allen*, 392 U.S. 236 (1968), Plaintiffs contend that they have Article III standing because the Community Trust Act "forc[es] them to violate their oaths of office." Pls.' Prel. Inj. Mot. at 18; *see also* Compl. ¶¶ 25, 67–68. But, as several courts have recognized, *Allen*'s cursory standing analysis predates, and cannot be reconciled with, the Supreme Court's subsequent elucidation of Article III standing. *See, e.g.*, *Drake v. Obama*, 664 F.3d 774, 780 (9th Cir. 2011) ("An oath taker's claims are, under contemporary jurisprudence, 'abstract constitutional grievances' insufficient to meet the requirements of Article III." (citation omitted)); *Finch v. Miss. State Med. Ass'n, Inc.*, 585 F.2d 765, 774–75 (5th Cir. 1978) (governor's fear of oath violation or civil liability held insufficient to confer standing). In any case, *Allen* is materially different and does not provide that Plaintiffs have standing here. In *Allen*, the plaintiff school board faced the concrete, actual, and imminent possibility of losing state funding, and the individual school board members faced removal from

office for refusing to perform their statutory duties. 392 U.S. at 241 & n.5. Plaintiffs face no comparable personal consequences, such as removal from office. Any purported fears of loss of funding, criminal liability, or civil enforcement requiring compliance with the Act are conjectural, hypothetical, and not certainly impending. Plaintiffs do not have standing to bring this suit.

**B. Plaintiffs Lack Capacity under Maryland Law to Bring this Suit.**

Plaintiffs also lack capacity to bring this suit. Maryland law vests the Attorney General—not individual state officers—with authority to represent and defend their offices' legal interests. As *Duckworth v. Deane*, 903 A.2d 883 (Md. 2006), makes clear, a state officer cannot circumvent that allocation of authority by recasting interests arising from their official duties as personal ones.

Capacity to sue concerns "a party's personal right to litigate in a federal court." 6A Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1542 (3d ed. 2010). Under Federal Rule of Civil Procedure 17(b), state law determines whether a plaintiff has capacity to sue. *Avery v. Burke Cnty.*, 660 F.2d 111, 113–14 (4th Cir. 1981). Capacity is a threshold requirement subject to challenge under Rule 12(b)(6), and a court must dismiss claims brought by a plaintiff who lacks capacity to sue. *See Texas v. Ysleta del Sur Pueblo*, 79 F. Supp.2d 708, 712 (W.D. Tex. 1999).

Plaintiffs lack capacity to sue under Maryland law. The Maryland Constitution establishes the Attorney General as the State's chief legal officer. Md. Const. art. V, § 3. Consistent with that constitutional role, Maryland law provides that the Attorney General "shall represent and otherwise perform all of the legal work for each officer and unit of the State government," except as provided by statute. Md. Code Ann., State Gov't § 6-106(b). Subsection (c) provides that "an officer or unit of the State government may not employ or be represented by a legal adviser or counsel other than the Attorney General or a designee of the Attorney General," except in circumstances not applicable here, such as when state officials have received "prior approval." *Id.* § 6-106(c). In *Rucker v. Harford County*, 558 A.2d 399 (Md. 1989), the Court of Appeals of

Maryland concluded,[3] "under Maryland law, sheriffs are State officials and/or employees." *Id.* at 406. As state officers, Plaintiffs lack capacity to sue concerning their official duties through privately retained counsel.

In *Duckworth*, the Court of Appeals of Maryland held that Section 6-106(b) and (c) are "dispositive" of a State officer's attempt to participate in litigation concerning his official responsibilities through privately retained counsel. 903 A.2d at 891. *Duckworth* also makes clear that Plaintiffs cannot avoid this limitation on capacity to sue by calling their interests personal. There, Duckworth "attempt[ed] to circumvent the legal requirement of representation by the Attorney General by calling his asserted interest in the litigation 'personal,'" but the Court determined that the interests "relate[d] entirely to the performance of his duties as a state official." *Id.* at 890. "[C]alling his interest 'personal' does not render § 6-106(b) and (c) inapplicable." *Id.* at 891. Because their asserted interests arise from their official duties, Plaintiffs lack capacity under Maryland law to bring this action, and their claims should be dismissed.[4]

**C. Plaintiffs Have No Viable Cause of Action Against Any Defendant.**

Plaintiffs' Supremacy Clause claims also should be dismissed because no cause of action authorizes them. In *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015), the Supreme Court held that the Supremacy Clause "is not the source of any federal rights," "certainly does not create a cause of action," and does not itself authorize suits by private actors to enforce federal law against the States. *Id.* at 325–26. The Clause merely "instructs courts what to do when state and

---

[3] The Court of Appeals of Maryland was renamed the Supreme Court of Maryland, effective December 14, 2022.

[4] Even if Plaintiffs were county officials, they would still be barred from suit. Maryland courts have consistently held that "subdivisions, as creatures of the State, share the interests of the State, and, as such, cannot challenge the acts of the State." *Baltimore Cnty. v. Churchill, Ltd.*, 313 A.2d 829, 833 (Md. 1974); *accord Bd. of Educ. of Prince George's Cnty. v. Sec'y of Pers.,* 562 A.2d 700, 705 (Md. 1989).

federal law clash but is silent regarding who may enforce federal laws in court, and in what circumstances they may do so." *Id.* at 325. Because Plaintiffs' preemption claims are brought under the Supremacy Clause itself, they fail unless some independent vehicle authorizes them.

Plaintiffs lack an independent vehicle to bring their claims. The Eleventh Amendment generally bars suits against a State absent consent or valid abrogation of immunity by Congress. *Singleton v. Maryland Tech. & Dev. Corp.*, 103 F.4th 1042, 1047 (4th Cir. 2024) ("[T]he Eleventh Amendment must be understood to mean that a State is not amenable to the suit of *any* individual in federal court without the State's consent."). To be sure, *Ex parte Young* provides a narrow exception authorizing certain suits seeking to enjoin a state officer from enforcing an unconstitutional act. *See Ex parte Young*, 209 U.S. at 159–60. As the Fourth Circuit has explained, however, two requirements must be met to sue a state officer for an injunction: First, the officer must have "some connection with the enforcement of the act." *Doyle v. Hogan*, 1 F.4th 249, 254 (4th Cir. 2021) (quoting *Ex parte Young*, 209 U.S. at 157)). "Without this enforcement duty, the officer is merely 'a representative of the State' who cannot be sued because allowing such a suit would essentially 'make the State a party.'" *Doyle*, 1 F.4th at 254 (quoting *Ex parte Young*, 209 U.S. at 157). Second, the state official "must 'threaten and [be] about to commence proceedings.'" *Doyle*, 1 F.4th at 255 (quoting *Ex parte Young*, 209 U.S. at 156); *see also McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010) ("The *Ex parte Young* exception is directed at 'officers of the state who are clothed with some duty in regard to the enforcement of the laws of the state, *and* who threaten and are about to commence proceedings. . . .").

None of the three Defendants in this case may be subject to suit based on the *Ex parte Young* exception. The State of Maryland must be dismissed since the exception "has no application in suits against the States and their agencies, which are barred regardless of the relief sought."

*Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). Governor Moore must also be dismissed because he lacks a specific duty to enforce, or to direct the enforcement of, the Community Trust Act. The Fourth Circuit has repeatedly ruled that *Ex parte Young* does not permit suit against governors in such circumstances. *See, e.g.*, *King v. Youngkin*, 122 F.4th 539, 548–49 (4th Cir. 2024) (*Ex parte Young* did not permit challenge against governor who lacked necessary connection to enforcing challenged state law); *Doyle*, 1 F.4th at 255–56 (same); *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001) (same).

Finally, Plaintiffs' claims against Attorney General Brown should also be dismissed. The Attorney General possesses statutory authority to enforce the Community Trust Act, *see* Md. Code Ann., Corr. Servs. § 8-805(e)(1), but *Ex parte Young* requires that a state officer must also "threaten" *and* be "about to commence proceedings." *McBurney*, 616 F.3d at 399. Whether proceedings are warranted would depend on the particular facts and alleged violations and the Attorney General's discretionary assessment of whether enforcement is appropriate. Plaintiffs' complaint does not allege that the Attorney General has threatened enforcement, commenced proceedings, undertaken any investigation, or otherwise taken any step toward enforcing the Act against Plaintiffs or anyone else. Rather, Plaintiffs' allegations of impending enforcement rest only on the prospect of private actors invoking the Act's private right of action. *See* Compl. ¶¶ 64–66. Such allegations do not render enforcement by the *Attorney General* imminent or threatened, rendering an *Ex parte Young* action premature. *See McBurney*, 616 F.3d at 402 ("Because the Attorney General has not enforced, threatened to enforce, or advised other agencies to enforce the [challenged law] against the Appellants, the *Ex parte Young* fiction cannot apply.").

**D. Plaintiffs Cannot Assert the Federal Government's Intergovernmental Immunity Interests.**

Separately, Plaintiffs' claim that the Community Trust Act "unlawfully regulat[es] the federal government," Compl. ¶¶ 92–96; Pls.' Prel. Inj. Mot. 26–27, fails for an additional threshold reason: the legal interest they seek to enforce belongs to the United States, not to them.

"[P]rundential standing encompasses 'the general prohibition on a litigant's raising another person's legal rights." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). Accordingly, a party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Here, Plaintiffs bring a claim alleging violation of the intergovernmental immunity doctrine, which bars "state laws that either 'regulat[e] the United States directly or discriminat[e] against the Federal Government or those with whom it deals' (e.g., contractors)." *United States v. Washington*, 596 U.S. 832, 838–39 (2022) (quoting *North Dakota v. United States*, 495 U.S. 423, 435 (1990) (plurality opinion)). Plaintiffs are neither part of the federal government nor federal contractors, and have no right to relief based on federal interests. They therefore lack prudential standing to bring their intergovernmental immunity claim.

**II. Plaintiffs' Claims Fail as a Matter of Law.**

Even if Plaintiffs could overcome the many threshold bases for dismissal, their claims fail. The Act is not preempted by federal law and does not violate intergovernmental immunity. This Court should dismiss Plaintiffs' complaint under Federal Rule 12(b)(6) for failure to state a claim, and, likewise, conclude that Plaintiffs have not established a likelihood of success on the merits.

**A. The Community Trust Act Is Not Preempted by Federal Law.**

Federal preemption arises where (1) Congress explicitly states its intent to displace state law within the text of a federal statute; (2) Congress creates "a framework of regulation so

pervasive . . . that Congress left no room for States to supplement it"; or (3) "where compliance with both federal and state regulations is a physical impossibility" or "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Arizona v. United States*, 567 U.S. 387, 399–400 (2012) (internal quotation marks and citations omitted). Plaintiffs assert that 8 U.S.C. §§ 1373 and 1644 expressly preempt the Community Trust Act (Count Three); that the Act poses an unconstitutional obstacle to federal objectives (Count Two); and that compelled compliance with the Act would expose them to federal criminal liability, making compliance with both federal and state law impossible (Count One). Each contention is meritless, and Plaintiffs' claims must be dismissed.

**1. *No Federal Law Expressly Preempts the Community Trust Act.***

Plaintiffs' express preemption claim rests on two federal statutes, 8 U.S.C. §§ 1373 and 1644. Neither provision expressly preempts the Community Trust Act because these statues are not valid preemption provisions, and the Act is, in any event, not inconsistent with federal law.

The Supreme Court's decision in *Murphy v. National Collegiate Athletic Association*, 584 U.S. 453 (2018), forecloses the Plaintiffs' claim that 8 U.S.C. §§ 1373 and 1644 can give rise to preemption under the Supremacy Clause. In *Murphy*, the Supreme Court explained that the Constitution "confers upon Congress the power to regulate individuals, not States." 584 U.S. at 472 (quoting *New York v. United States*, 505 U.S. 144, 166 (1992)). Thus, a federal statute that "dictates what a state legislature may and may not do," *id.* at 474, is not a valid preemption provision. *Id.* at 479–80. This is true even where the federal interests are strong; "[n]o matter how powerful the federal interest involved, the Constitution simply does not give Congress the authority to require the States to regulate." *New York*, 505 U.S. at 178.

Sections 1373 and 1644 are precisely the type of statutes that *Murphy* held are not valid preemption provisions. Section 1373(a) bars "Federal, State, or local government entit[ies] or

official[s]" from "prohibit[ing], or in any way restrict[ing], any government entity or official from sending to, or receiving from, [federal immigration officials] information regarding the citizenship or immigration status, lawful or unlawful, of any individual." 8 U.S.C. § 1373(a). Section 1644 features similar language: "no State or local government entity may be prohibited or in any way restricted," from communicating certain information to the federal government. 8 U.S.C. § 1644.

These provisions do not regulate private actors. Nor do they establish substantive rules governing federal immigration enforcement. Instead, they purport to prohibit states and local governments from adopting policies governing the conduct of their own officers and the operations of their own institutions. As other courts have held, Sections 1373 and 1644 are not valid preemption provisions under the test set out in *Murphy*. *See, e.g.*, *Ocean Cnty. Bd. of Comm'rs v. Att'y Gen. of New Jersey*, 8 F.4th 176, 182 (3d Cir. 2021) ("Our conclusion that neither § 1373 nor § 1644 regulates private actors is fatal to Appellants' argument that they preempt the Directive. A federal statute that does not regulate private actors cannot serve as a basis for preemption." (internal citation omitted)); *United States v. Illinois*, 796 F. Supp. 3d 494, 521 (N.D. Ill. 2025) ("Section 1373(a) is not a preemptive provision because it doesn't regulate private actors in language or effect. The plain test of § 1373 only operates on State and local government entities and officials, prohibiting restrictions on their ability to share certain immigration-related information with DHS.").

Even if Sections 1373 and 1644 were constitutionally valid preemption provisions, which they are not, the Community Trust Act remains consistent with these federal provisions such that the Act is not expressly preempted. Sections 1373 and 1644 protect the voluntary exchange of "information regarding the citizenship or immigration status" of an individual. 8 U.S.C. §§ 1373(a), 1644. As many courts have held, the provisions cover only "a person's legal

classification under federal law" and do not reach any other information about an individual, such as their contact information, address, release date, or custody status. *United States v. California*, 921 F.3d 865, 891 (9th Cir. 2019); *see also Cnty. of Ocean v. Grewal*, 475 F. Supp. 3d 355, 376 (D.N.J. 2020), *aff'd sub nom. Ocean Cnty. Bd. of Comm'rs v. Att'y Gen. of the State of N.J.*, 8 F.4th 176; *United States v. New York*, 814 F. Supp. 3d 266, 277–78 (N.D.N.Y. 2025).

The Community Trust Act is consistent with any limited demand imposed by Sections 1373 and 1644 because it permits disclosure of citizenship and immigration status information. *See* Revised Fiscal & Policy Note, S.B. 791, 2026 Leg., Reg. Sess. at 3 (May 4, 2026) (acknowledging Section 1373 without providing any suggestion that the bill would disregard it); Floor Report, Senate Jud. Proc. Comm., S.B. 791, 2026 Leg., Reg. Sess. at 3 (same); *see also* AG Guidance at 3 (interpreting the Community Trust Act consistently with federal law, advising state and local law enforcement that the Act does not prohibit the sharing only information regarding an individual's citizenship or immigration status). The Court should not presume that the General Assembly intended to enact a statute in conflict with federal law absent a clear statement to that effect. Rather, where a state statute is susceptible to more than one reasonable interpretation, courts generally adopt the construction that avoids constitutional concerns. *See Am. Petroleum Inst. v. Cooper*, 718 F.3d 347, 354 (4th Cir. 2013) ("[W]hen determining the interplay of the federal and state statutes at issue, we are obliged to attempt to harmonize those statutes if reasonably possible."); *Chappell v. Southern Maryland Hosp. Inc.*, 578 A.2d 766, 772 (Md. 1990) (similar).

**2. *The Community Trust Act is Not an Unconstitutional Obstacle to Federal Immigration Enforcement.***

Plaintiffs' obstacle preemption theory likewise fails as a matter of law. *See* Pls.' Prel. Inj. Mot. at 21–25. The Act poses no unconstitutional obstacle.

"Obstacle preemption occurs when a state law stands as an obstacle to the accomplishment and execution of the full purposes of the federal law." *N. Va. Hemp & Agric., LLC v. Virginia*, 125 F.4th 472, 493 (4th Cir. 2025). "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *KalshiEX LLC v. Martin*, 793 F. Supp. 3d 667, 684 (D. Md. 2025) (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000)). The Supreme Court has emphasized that "[i]mplied preemption analysis does not justify a 'freewheeling judicial inquiry' into whether a state statute is in tension with federal objectives. . . . Our precedents establish a high threshold must be met if a state law is to be preempted for conflicting with the purposes of a federal Act." *Chamber of Commerce of the United States v. Whiting*, 563 U.S. 582, 607 (2011) (internal quotation marks and citations omitted)). Similarly, the Fourth Circuit has instructed that "a court should not find conflict preemption unless preemption was 'the clear and manifest purpose of Congress.'" *N. Va. Hemp & Agric., LLC*, 125 F.4th at 493 (quoting *Arizona*, 567 U.S. at 400).

The Community Trust Act is not an unconstitutional obstacle to federal immigration enforcement. The purpose and intended effect of the Immigration and Nationality Act and other federal immigration laws is to vest federal immigration officials with broad authority to administer and enforce the Nation's immigration laws, including the authority to inspect, interrogate, investigate, arrest, detain, and remove noncitizens suspected of violating federal law. *E.g.*, 8 U.S.C. §§ 1182, 1226, 1231, 1357. The Community Trust Act leaves every aspect of that federal authority untouched. It does not limit federal officers from investigating suspected immigration violations, questioning individuals, making arrests authorized by federal law, taking individuals into federal custody, initiating or conducting removal proceedings, or otherwise carrying out any responsibility Congress assigned to federal immigration authorities.

The INA and other federal immigration laws do not have the purpose or effect of compelling state participation in federal immigration enforcement. To the contrary, under the anticommandeering doctrine, the Tenth Amendment prohibits Congress from compelling states to administer or enforce federal regulatory programs. *Murphy*, 584 U.S. at 473 ("'The Federal Government' may not 'command the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program.'" (quoting *Printz*, 521 U.S. at 935)). Congress legislated against that constitutional backdrop, and the INA and other federal immigration laws reflect that Congress created certain opportunities for states to voluntarily participate in federal immigration enforcement but did not—and could not—mandate such participation. *See, e.g.*, 8 U.S.C. § 1357(g)(9) (providing that nothing in the subsection shall be construed to require any state or political subdivision of a state to enter into an agreement with the Attorney General to participate in federal immigration enforcement); 8 C.F.R. § 287.7 (an immigration detainer "is a *request* that [an] agency advise the Department [of Homeland Security], prior to release of the alien"); *see also Arizona*, 567 U.S. at 408 ("Federal law specifies limited circumstances in which state officers *may* perform the functions of an immigration officer."); *City of El Cenizo v. Texas*, 890 F.3d 164, 178 (5th Cir. 2018) ("Federal law does not suggest the intent—let alone a 'clear and manifest' one—to prevent states from regulating *whether* their localities cooperate in immigration enforcement"). Congress intended to encourage States to aid federal law enforcement efforts, but, as other courts have observed, "a hope, however fervent, that federal-state cooperation will occur does not empower the federal government to conscript the States; were it otherwise, the anticommandeering doctrine would cease to exist." *United States v. New York*, 810 F. Supp. 3d 329, 351 (N.D.N.Y. 2025).

Further, in its enactment of federal immigration laws, Congress has not exhibited a clear

and manifest intent to displace the states' traditional police powers. *See Buchanan v. Warley*, 245 U.S. 60, 74 (1917) ("The authority of the state to pass laws in the exercise of the police power, having for their object the promotion of the public health, safety and welfare is very broad."); *Ensminger v. Comm'r of Internal Revenue*, 610 F.2d 189, 191 n.4 (4th Cir. 1979) ("Federal deference in matters within the state police power reflects more than a policy of comity. In fact, it represents a constitutionally derived recognition of the essential character of state government within our federal system."). Where Congress intends "such a radical change in the federal-state balance," it would speak "with a much clearer voice" in setting out an intent to preempt potentially inconsistent state laws. *GenBioPro, Inc. v. Raynes*, 144 F.4th 258, 277 (4th Cir. 2025). This Court should not lightly conclude that Congress intended to displace the Assembly's authority to define the scope of its officers' authority. Plaintiffs' conflict preemption claim fails as a matter of law, and it should be dismissed.

**3. *The Community Trust Act Is Not Impossibly in Conflict with Federal Law.***

Impossibility preemption exists where compliance with both state and federal law is impossible. *English v. General Electric Co.*, 496 U.S. 72, 79 (1990). The Supreme Court has "cautioned many times before, the 'possibility of impossibility is not enough.'" *Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299, 314 (2019). Courts "refuse[] to find clear evidence of such impossibility where the laws of one sovereign permit an activity that the laws of the other sovereign restrict or even prohibit." *Id.* Moreover, "a state or locality's imposition of additional requirements above a federal minimum is unlikely to create a direct and positive conflict with federal law." *Southern Blasting Services, Inc. v. Wilkes Cnty.*, 288 F.3d 584, 591 (4th Cir. 2002).

Plaintiffs' impossibility-preemption theory rests on the premise that "in many likely situations Plaintiffs cannot comply with the Act without violating federal criminal law," including harboring. Pls.' Prelim. Inj. Mot. at 20. Not so. As discussed above, the Act does not require

Plaintiffs to take affirmative steps to prevent federal officers from apprehending individuals after release. It instead defines when Maryland officials may transfer individuals to federal immigration authorities, including by providing advance notification of a release for that purpose. Further, state officials routinely must adjust their procedures in response to new state laws, and Plaintiffs identify no federal requirement with which the resulting changes would directly conflict.

Once Plaintiffs' mistaken interpretation is set aside, their preemption theory collapses. They identify no federal law requiring them to engage in conduct that the Act prohibits. The Act is not preempted simply because it establishes a higher threshold for Maryland officers to participate in immigration enforcement than would apply without it. *See Albrecht*, 587 U.S. at 314; *Southern Blasting Services*, 288 F.3d at 591. Because Plaintiffs can comply with both federal and state law simultaneously, they have failed to plausibly allege impossibility preemption.

**B. The Community Trust Act Does Not Directly Regulate the Federal Government.**

Plaintiffs also allege that the Community Trust Act violates the intergovernmental immunity doctrine because the Act purportedly regulates the federal government (Count Four). Even if Plaintiffs had prudential standing, which they do not, this claim fails as a matter of law.

The Supremacy Clause "generally immunizes the Federal Government from state laws that directly regulate or discriminate against it," *Washington*, 596 U.S. at 835, under the intergovernmental immunity doctrine. A state law directly regulates the United States "when it 'places [either] a prohibition' or a mandate on the federal government." *CoreCivic, Inc. v. Governor of New Jersey*, 145 F.4th 315, 321 (3d Cir. 2025) (alteration in original) (quoting *Hancock v. Train*, 426 U.S. 167, 180 (1976)). The Supreme Court has "thoroughly repudiated" the view that "any state regulation which indirectly regulates the Federal Government's activity is unconstitutional." *North Dakota*, 495 U.S. at 434–35; *cf. Penn Dairies, Inc. v. Milk Control Comm'n of Pa.*, 318 U.S. 261, 270–71 (1943) (holding that state regulation of federal contractor's

milk prices did not violate intergovernmental immunity even though it increased the federal government's procurement costs). The critical question is whether state laws "affect incidentally the mode of carrying out [federal] employment," or rather seek to "control" federal functions. *Johnson v. Maryland*, 254 U.S. 51, 56–57 (1920).

The Community Trust Act regulates only the conduct of Maryland state and local officials. The Act leaves every federal immigration power Congress conferred upon federal immigration officials exactly as it found it. Plaintiffs contend that the Act violates the intergovernmental immunity principle because it "direct[s] state and local law enforcement not to arrest or detain an individual pursuant to a civil immigration detainer (expect in narrow circumstances)." Pls.' Prelim. Inj. Mot. at 26. But Plaintiffs conflate a limitation on the authority of Maryland officials with a regulation of federal officials. The Community Trust Act does not at all require the United States to obtain a judicial warrant or court order as a condition of exercising any federal power. Rather, the Act provides that Maryland's officers may not exercise Maryland's detention authority or other powers conferred by Maryland law absent specified conditions. The practical effect is that the federal government may either rely on its own officers or seek the participation of Maryland officers who are bound by state law restrictions.[5]

---

[5] In *Genesis GSA Strategic One, LLC v. Howard County*, a court in this District held that a Maryland county discriminated against a federal government contractor in violation of the intergovernmental immunity doctrine by revoking building permits based on a state law that imposed requirements the construction of an immigration detention facility for the federal government. No. 26-cv-915, 2026 WL 2294479 (D. Md. Aug. 10, 2026). The Court "d[id] not decide [the contractor's] claim based on direct regulation." *Id.* at *19. Also, the Court explained: "A discrimination claim cannot be used as 'an end-run around the Tenth Amendment' where a state has merely 'decline[d] to assist with federal immigration efforts.' . . . That exception does not apply here; this case does not involve a request by the federal government for the State of Maryland to 'assist with federal immigration efforts.'" *Id.* at 19 n.12 (citations omitted). This case is precisely the kind that the Court in *Genesis* contemplated, where an intergovernmental immunity claim must be carefully assessed in light of Tenth Amendment anticommandeering principles.

Maryland's regulation of its own officers may "affect incidentally the mode of carrying out [federal] employment," *Johnson*, 254 U.S. at 56, but such a state law does not unconstitutionally regulate the federal government, as courts have repeatedly held. *See, e.g.*, *Texas v. Dep't of Homeland Sec.*, 123 F.4th 186, 206–07 (5th Cir. 2024) ("Texas's suit does not seek to control how Border Patrol agents carry out their duties. At most, Texas's seeking to preserve its *own* property might incidentally affect how agents do their jobs."); *McHenry Cnty. v. Raoul*, 44 F.4th 581, 592–93 (7th Cir. 2022) (Illinois law that barred state and local law enforcement from entering into or maintaining cooperative agreements for immigration detention "directly regulates only State and local entities and law enforcement—not the federal government" and thus does not unconstitutionally regulate the federal government); *New York*, 810 F. Supp. 3d at 352–53 (New York law barring certain civil immigration arrests at state courthouses did not regulate federal agents and instead defined "what activities are not permissible in state-owned facilities"); *Illinois*, 796 F. Supp. 3d at 535 ("[T]he Policies prohibit employees from responding to immigration detainers, providing release data information, or giving immigration agents access to persons in custody unless presented with a criminal warrant. . . . All dictate what local workers may and may not do. None of the Polices impose 'direct regulation on any federal official or agency.'" (quoting *McHenry Cnty.*, 44 F.4th at 593)).

Accepting the Plaintiffs' theory would substantially expand the intergovernmental immunity doctrine beyond constitutional limits and in ways repeatedly rejected by the Supreme Court. *See North Dakota*, 495 U.S. at 434 ("Over 50 years ago, however, the Court decisively rejected the argument that any state regulation which indirectly regulates the Federal Government's activity is unconstitutional"). Under their view, any state law governing the duties of state employees or the allocation of state resources could be recast as a regulation whenever the federal

government asserts that it would prefer greater assistance. The doctrine does not extend so far.

## III. Plaintiffs Fail to Establish Other Requirements for a Preliminary Injunction.

### A. Plaintiffs Have Not Established Irreparable Harm.

A party seeking a preliminary injunction must demonstrate that that it is "likely to suffer irreparable harm in the absence of preliminary relief." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (quoting *Winter*, 555 U.S. at 20). "To establish irreparable harm, the movant must make a 'clear showing' that it will suffer harm that is 'neither remote nor speculative, but actual and imminent'" and that the harm "cannot be fully rectified by the final judgment after trial." *Mountain Valley Pipeline, LLC*, 915 F.3d at 216 (citations omitted). Plaintiffs have fallen short.

Plaintiffs waited nearly three months after the Act took effect to seek preliminary relief, yet identify no harm that has materialized during that period. As discussed above, their asserted risks of civil enforcement and criminal prosecution rest on speculation and conjecture and are founded on misunderstandings of what the Act requires. Likewise, the claimed loss of funding is unsupported and would not involve harm to Plaintiffs, but to various Maryland counties. Finally, Plaintiffs' claims that implementing the Act will increase crime is unsupported, generalized, and rests on speculation. Plaintiffs have not established any harm, let alone irreparable harm.

### B. The Balance of Equities and the Public Interest Weigh in Defendants' Favor.

The court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief," with "particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987)). Here, the balance of the equities and the public interest weigh decisively against Plaintiffs' request for emergency relief.

Contrary to Plaintiffs' arguments, *see* Pls.' Prel. Inj. Mot. at 29, an injunction would not preserve the status quo; it would suspend a duly enacted law that has been in effect for three months

and displace the General Assembly's considered policy judgment, effecting irreparable harm on the State. *See Maryland v. King*, 567 U.S. 1301, 1303 (2012) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparably injury." (quoting *New Motor Vehicle Bd. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977)). It would also risk compelling Maryland officers to facilitate federal immigration functions that the State has chosen not to undertake, precisely the kind of intrusion on state sovereignty that the anti-commandeering principle protects against. *See Murphy*, 584 U.S. at 473. Plaintiffs have identified no concrete harm from allowing the Act to remain in effect, as their public safety argument, *see* Pls.' Prel. Inj. Mot. at 29, rests on nothing more than conjecture.

## IV. Any Preliminary Relief Granted Should Be Strictly Limited to Plaintiffs who Have Established Particularized Injury.

If the Court were to conclude that preliminary injunctive relief is warranted, any relief should not extend beyond Plaintiffs to any non-party sheriffs, local law enforcement officers, or statewide officials who have not appeared before the Court. The Supreme Court has established that while courts of equity are entitled to "fashion a remedy that awards complete relief," the complete-relief principle does not justify awards of relief to non-parties. *Trump v. CASA, Inc.*, 606 U.S. 831, 850–51 (2025). Here, Plaintiffs' alleged harms stem from violation of their oath of office, civil enforcement actions against them, and criminal prosecutions against them. Enjoining Defendants from enforcing the Act against Plaintiffs will provide complete relief to the extent any relief is warranted. Any preliminary injunctive relief should be tailored only to Plaintiffs before the Court who have established a particularized injury.

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims should be dismissed and their motion denied.

Dated: August 25, 2026

Respectfully submitted,

**ANTHONY G. BROWN**
ATTORNEY GENERAL OF MARYLAND

*/s/ Virginia A. Williamson*
Virginia A. Williamson (D. Md. Bar No. 31472)
Adam Kirschner (D. Md. Bar No. 31767)
Lauren Gorodetsky (D. Md. Bar No. 32172)
*Assistant Attorneys General*
Office of the Attorney General
200 Saint Paul Place
Baltimore, MD 21202
(410) 576-6584
vwilliamson@oag.maryland.gov

*Counsel for Defendants*