**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| JEFFREY R. GAHLER, *et al.*, | * | |
| Plaintiff, | * | |
| v. | * | |
| WES MOORE, Governor, in his official capacity, *et al.*, | * | Case No. 1:26-cv-02057-MJM |
| | * | |
| Defendants. | * | |
| | * | |

* * * * * * * * * * * *

**REPLY MEMORANDUM IN SUPPORT**
**OF DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS


INTRODUCTION ..... 1

ARGUMENT ..... 1

I. Plaintiffs Cannot Overcome Threshold Defects in Their Claims. ..... 1

A. Plaintiffs Have Not Cured Their Lack of Standing. ..... 1

B. Plaintiffs' Arguments Do Not Resolve Their Lack of Capacity to Bring this Suit. ..... 5

C. Plaintiffs Do Not Establish a Viable Cause of Action Against Any Defendant. ..... 7

D. Plaintiffs Cannot Assert the Federal Government's Intergovernmental Immunity Interests. ..... 9

II. Plaintiffs' Preemption Claims Fail as a Matter of Law. ..... 10

A. Sections 1373 and 1644 Do Not Expressly Preempt the Community Trust Act. ..... 10

B. The Community Trust Act is Not Obstacle Preempted. ..... 11

C. The Community Trust Act Is Not Impossibility Preempted. ..... 13

III. The Community Trust Act Does Not Regulate Federal Immigration Authorities. ..... 14

CONCLUSION ..... 15

# TABLE OF AUTHORITIES

## Cases

*Arizona v. United States*, 567 U.S. 387 (2012) ........ 13

*Board of Education v. Allen*, 392 U.S. 236 (1968) ........ 3

*Carrero v. Farrelly*, 310 F. Supp. 3d 542 (D. Md. 2018) ........ 2

*CoreCivic, Inc. v. Governor of New Jersey*, 145 F.4th 315 (3d Cir. 2025) ........ 10, 15

*Crowell v. Benson*, 282 U.S. 22 (1932) ........ 11

*Duckworth v. Deane*, 903 A.2d 883 (Md. 2006) ........ 6

*English v. General Electric Co.*, 496 U.S. 72 (1990) ........ 14

*Ex parte Young*, 209 U.S. 123 (1908) ........ 7, 8, 9

*GenBioPro v. Raynes*, 144 F.4th Cir. 258 (4th Cir. 2025) ........ 13

*Hand v. Manufacturers & Traders Trust Co.*, 952 A.2d 240 (Md. 2008) ........ 6

*Johnson v. Hurtt*, 893 F. Supp. 2d 817 (S.D. Tex. 2012) ........ 11

*Kerns v. United States*, 585 F.3d 187 (4th Cir. 2009) ........ 1, 2

*Kirgan v. Parks*, 478 A.2d 713 (Md. 1984) ........ 6

*McBurney v. Cuccinelli*, 616 F.3d 393 (4th Cir. 2010) ........ 7, 9

*McHenry Cnty. v. Raoul*, 44 F.4th 581 (7th Cir. 2022) ........ 15

*Mobil Oil Corp. v. Attorney Gen. of Va.*, 747 F. Supp. 1173 (E.D. Va. 1990) ........ 8

*Mobil Oil Corp. v. Attorney Gen. of Va.*, 940 F.2d 73 (4th Cir. 1991) ........ 2, 3, 8, 9

*Murphy v. National Collegiate Athletic Association*, 584 U.S. 453 (2018) ........ 10, 12, 13

*N. Va. Hemp & Agric., LLC v. Virginia*, 125 F.4th 472 (4th Cir. 2025) ........ 12

*Panhorst v. United*, 241 F.3d 367 (4th Cir. 2001) ........ 3

*Phillip Petro. Co. v. Shutts*, 472 U.S. 797 (1985) ........ 6

*Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908 (9th Cir. 2004)................................ 8

*Printz v. United States*, 521 U.S. 898 (1997) ............................................................ 12, 13

*S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324 (4th Cir. 2008) .................................................. 9

*Shavitz v. Guilford County Bd. of Educ.*, 100 F. App'x 146 (4th Cir. 2004) ................................. 6

*State ex rel. Attorney Gen. v. Burning Tree Club, Inc.*, 481 A.2d 785 (Md. 1984) ..................... 5, 6

*United Supreme Council v. United Supreme Council*, 792 F. App'x 249 (4th Cir. 2019).............. 5

*Wildlife Fed'n v. Limehouse*, 549 F.3d 324 (4th Cir. 2008) ......................................................... 9

*Ziklag IP LLC v. Amazon Web Servs., Inc.*, 776 F. Supp. 3d 745 (N.D. Ill. 2025)...................... 5, 6

**Statutes**

8 U.S.C. § 1357 ........................................................................................................... 9, 10

8 U.S.C. § 1373 ..........................................................................................................10, 11

8 U.S.C. §1644 ...........................................................................................................10, 11

Md. Code Ann., Crim. Proc. § 5-104.1 ....................................................................................... 10

Md. Code Ann., State Gov't § 6-106 ..................................................................... 5, 6, 7, 8

**Rules**

Fed. R. Civ. P. 17 ........................................................................................................ 5

**Miscellaneous**

6A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1559 (3d ed. 2023) ... 5

## INTRODUCTION

Plaintiffs' opposition to dismissal does not resolve the multiple threshold defects requiring dismissal of this action. As explained in Defendants' motion to dismiss and below, Plaintiffs lack standing, capacity to sue, a cause of action, and prudential standing to bring their intergovernmental immunity claim. Even if Plaintiffs could overcome these deficiencies—which they have not and cannot—their Supremacy Clause claims fail as a matter of law. Plaintiffs' preemption and intergovernmental immunity theories misconstrue the governing federal law and fail to establish any unconstitutional conflict between the Community Trust Act and federal law. For these reasons, Plaintiffs' claims should be dismissed.

## ARGUMENT

### I. Plaintiffs Cannot Overcome Threshold Defects in Their Claims.

Standing, capacity, and a cause of action are all distinct requirements for litigating in federal court. Plaintiffs fail to satisfy each of these prerequisites and, independently, cannot assert the federal government's intergovernmental immunity interests. These threshold defects each provide independent grounds for dismissal.

#### A. Plaintiffs Have Not Cured Their Lack of Standing.

Plaintiffs' opposition to dismissal does not substantiate their standing theories. They continue to rely on a series of alleged injuries that depend on speculative and contingent events and that cannot establish Article III standing.

To start, Plaintiffs contend that, under *Kerns v. United States*, 585 F.3d 187 (4th Cir. 2009), Defendants' motion to dismiss for lack of jurisdiction is premature because Plaintiffs have not had an opportunity to conduct discovery concerning their jurisdictional allegations. Pls.' Mem. in Reply in Support of Pls.' Mot. for a Prelim. Inj. & Opp'n to Defs.' Mot. to Dismiss ("Pls.' Opp'n") at 4. But *Kerns* does not establish a categorical entitlement to discovery whenever jurisdictional

allegations are disputed. *Kerns* arose in the Federal Tort Claims Act context, where the jurisdictional question of whether the employee acted within the scope of his employment was intertwined with the underlying tort claims. *See* 585 F.3d at 193. Here, by contrast, any facts that may be relevant to standing—including whether Plaintiffs face a sufficiently concrete and imminent threat of federal criminal liability—are not intertwined with the facts central to the merits of their claims that the Community Trust Act is preempted by federal law. Moreover, Plaintiffs' standing theories depend on wholly speculative allegations and unresolved legal questions, rather than facts uniquely within Defendants' possession, and Plaintiffs identify no discovery that would substantiate their asserted injuries. *Cf. Carrero v. Farrelly*, 310 F. Supp. 3d 542, 549 n.5 (D. Md. 2018) (denying request for jurisdictional discovery where, among other things, the information sought was too speculative to support standing). The Court should therefore reject Plaintiffs' request for jurisdictional discovery.

Separately, Plaintiffs invoke a series of cases that do not support their standing theories. First, Plaintiffs misapply *Mobil Oil Corp. v. Attorney General of Virginia*, 940 F.2d 73 (4th Cir. 1991), arguing that it stands for the proposition that standing exists whenever a state attorney general possesses statutory authority to enforce a challenged law and has not disclaimed an intent to do so. Pls.' Opp'n at 7–8. But the basis for standing in *Mobil Oil* was that the challenged law had already caused Mobil pecuniary harm through administrative and financial burdens, while noncompliance exposed it to "a stiff civil remedy." 940 F.2d at 75. In other words, Mobil faced an injury regardless of whether it complied with the challenged law. Here, by contrast, Plaintiffs have not identified comparable, nonspeculative injuries that they have purportedly already incurred as a result of complying with the Community Trust Act. Nor do Plaintiffs face the same direct exposure to civil penalties that Mobil faced for noncompliance, because the Community

Trust Act authorizes injunctive relief but does not impose individual liability on sheriffs. *See* Defs.' Mem. of Law in Supp. of Defs.' Mot. to Dismiss & in Opp'n to Pls.' Mot. for Prelim. Inj. ("Defs.' MTD") at 11. Instead, Plaintiffs' alleged injuries—including the asserted risk of federal criminal liability—depend on speculative and contingent events and on the disputed and incorrect premise that the Community Trust Act requires affirmative acts of concealment or obstruction. *Mobil Oil* does not eliminate Plaintiffs' obligation to establish a concrete, particularized, and imminent injuries fairly traceable to the Community Trust Act, which Plaintiffs have not done.

Plaintiffs' reliance on *Board of Education v. Allen*, 392 U.S. 236 (1968), is similarly misplaced. Plaintiffs characterize *Allen* as holding that an alleged oath-of-office conflict alone establishes standing, Pls.' Opp'n at 8, but the Supreme Court made clear that the plaintiffs there faced a concrete choice: complying with the challenged law would required them to violate their oaths, while refusing to comply was likely to result in expulsion from office and reduced state funding. *Allen*, 392 U.S. at 241 n.5. Plaintiffs cannot establish standing simply by invoking the oath-related aspect of *Allen* while disregarding the concrete consequences that made plaintiffs' "personal stake" in the case sufficiently immediate. *Id.* Here, by contrast, Plaintiffs' asserted injuries depend on speculative future events and do not present the concrete choice between compliance and immediate, consequential harm that established standing in *Allen*. Nor do Defendants ask this Court to overrule *Allen*, as Plaintiffs assert. Pls.' Opp'n at 8. In noting *Allen*'s cursory and outdated standing analysis, Defendants rely on the principle that courts "[c]ognizant[] of the waning support of [a] doctrine," may "read its requirements strictly." *Panhorst v. United*, 241 F.3d 367, 370–72 (4th Cir. 2001) (assessing the applicability of the limited "unique circumstances" exception to the jurisdictional requirement of a timely notice of appeal in light of evidence that the doctrine "has fallen into disuse").

Beyond those cases, Plaintiffs' mention of State Criminal Alien Assistance Program ("SCAAP") funding does not cure deficiencies identified in Defendants' motion. Def.' MTD at 9–10. Plaintiffs assert that the funds defray incarceration costs and therefore that their loss would constitute a direct injury. Pls.' Opp'n at 8. But, as Defendants underscore in their opening motion, and which Plaintiffs do not dispute, SCAAP funds are awarded to counties, rather than to Plaintiffs individually. Plaintiffs also fail wholly to address Defendants' argument that the counties and federal government stand between Plaintiffs and any potential loss of funding. Defs.' MTD at 9–10. Moreover, citing other instances in which the federal government allegedly sought to restrict different funding, Pls.' Opp'n at 8–9, does nothing to show that these Plaintiffs face an actual, imminent risk of losing SCAAP funding because of the Community Trust Act.

Similarly, Plaintiffs continue to rest their theory of federal criminal liability on a disputed interpretation of the Community Trust Act and a series of contingent events. Plaintiffs do not identify any provision of the Act *requiring* the additional actions that claim they must take, such as concealing an individual's location. *See* Pls.' Opp'n at 9–10. Nor do they explain their assertion that an intent to comply with state law necessarily establishes the intent required under the federal harboring statute. *Id.* at 10. Plaintiffs' reliance on alleged past prosecutions and enforcement warnings, *id.* at 10–11, likewise does not establish a credible threat that *these* Plaintiffs will be prosecuted for complying with the Community Trust Act. Plaintiffs have fallen well short of establishing a credible threat of prosecution under federal law.

Finally, Plaintiffs do not respond to Defendants' separate arguments that their public safety theory is a generalized grievance and that their civil enforcement theory fails to establish concrete intention to engage in prohibited conduct or a credible threat of enforcement. *See* Defs.' MTD at 10–11. Those arguments therefore remain unrebutted. In short, Plaintiffs' new arguments do not

address the deficiencies identified in Defendants' motion. Plaintiffs' alleged injuries remain speculative, dependent on independent decisions by third parties, or rest on an incorrect interpretation of the Act. Plaintiffs have therefore failed to establish Article III standing.

**B. Plaintiffs' Arguments Do Not Resolve Their Lack of Capacity to Bring this Suit.**

Plaintiffs next conflate legal capacity with standing. Pls.' Opp'n at 4–5. As explained in Defendants' motion to dismiss, capacity under Federal Rule of Civil Procedure 17 concerns a party's legal authority under state law to bring and litigate an action, a requirement distinct from standing. Defs.' MTD at 15; *see also Ziklag IP LLC v. Amazon Web Servs., Inc.*, 776 F. Supp. 3d 745, 753–54 (N.D. Ill. 2025) (explaining that capacity concerns "'personal qualifications of a party to litigate,' and 'typically is determined without regard to the particular claim or defense being asserted.'" (quoting 6A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1559 (3d ed. 2023))); *cf. United Supreme Council v. United Supreme Council*, 792 F. App'x 249, 255–56 (4th Cir. 2019) (reassessing standing after a district court conflated standing with capacity to sue). For the reasons set forth in Defendants' motion, Plaintiffs lack capacity to sue, and their lack of capacity is an independent basis to dismiss their claims.

Plaintiffs' opposition to dismissal does not identify any applicable statutory exception to the requirements of the key statute: § 6-106 of Maryland's State Government Article. Nor do they allege that they obtained the prior approval contemplated by § 6-106(c) or pinpoint any language in the statute or cases interpreting it that would exempt their claims from § 6-106's reach. *See* Pls.' Opp'n at 4–5. Instead, Plaintiffs rely on *State ex rel. Attorney Gen. v. Burning Tree Club, Inc.*, 481 A.2d 785 (Md. 1984), to argue that public officials facing a dilemma over whether to comply with a law they believe to be unconstitutional have standing to seek declaratory and injunctive relief. Pls.' Opp'n at 4. That argument does not address the capacity issue.

First, Maryland courts have recognized that standing and legal capacity are distinct concepts. *See Hand v. Manufacturers & Traders Trust Co.*, 952 A.2d 240, 253 (Md. 2008) (discussing the distinction between standing and legal capacity (citing *Kirgan v. Parks*, 478 A.2d 713, 715 (Md. 1984))). *Burning Tree* addressed standing, not whether state officials possess the legal authority to litigate independently of the Attorney General despite § 6-106. Indeed, because the Maryland Attorney General himself brought the action in *Burning Tree*, the case presented no occasion for the court to construe § 6-106. Second, *Burning Tree* was decided by a Maryland state court, and therefore does not establish Plaintiffs' standing under Article III in this federal action. *See Shavitz v. Guilford County Bd. of Educ.*, 100 F. App'x 146 (4th Cir. 2004) ("[W]hen a case is in federal court [], state standing principles do not govern." (citing *Phillip Petro. Co. v. Shutts*, 472 U.S. 797, 804 (1985))).

Nor does Plaintiffs' attempt to distinguish *Duckworth v. Deane*, 903 A.2d 883 (Md. 2006), resolve the issue. Pls.' Opp'n at 5. Plaintiffs contend that *Duckworth* did not involve the "dilemma doctrine" or a constitutional challenge to a state statute and that § 6-106 does not apply to their claims brought in their individual capacities. Pls.' Opp'n at 5. But Plaintiffs identify no statutory language or case law establishing such exceptions. Moreover, capacity is ordinarily determined without regard to a particular claim or defense asserted. *Ziklag*, 776 F. Supp. 3d at 753–54. Plaintiffs therefore cannot establish an exemption from § 6-106 merely by characterizing their claims as constitutional or individual capacity. Plaintiffs' attempt to distinguish *Duckworth* and avoid § 6-106 through individual capacity pleading fails because, as explained in Defendants' motion, characterizing an interest as "'personal' does not render § 6-106(b) and (c) inapplicable." Defs.' MTD at 16 (quoting *Duckworth*, 903 A.2d at 891).

Accordingly, Plaintiffs' reliance on the dilemma doctrine does not establish their capacity to bring and litigate this action and their claims should therefore be dismissed.

**C. Plaintiffs Do Not Establish a Viable Cause of Action Against Any Defendant.**

As noted in Defendants' opening brief, Plaintiffs cannot establish a cause of action against any of the defendants. Indeed, Plaintiffs do not even address Defendants' argument that the State of Maryland and Governor Moore must be dismissed from this action because they are not proper defendants under *Ex parte Young*, 209 U.S. 123 (1908). *See* Pls.' Opp'n at 5–7. As explained in Defendants' motion, the *Ex parte Young* exception does not apply to suits against the State, and Governor Moore lacks the required connection to enforcement of the Community Trust Act. *See* Defs.' MTD at 16–18. Claims against those Defendants must be dismissed.

Plaintiffs' arguments concerning the Maryland Attorney General as a defendant fare no better. Plaintiffs rely on *McBurney v. Cuccinelli*, 616 F.3d 393 (4th Cir. 2010), noting that a threat of enforcement need not be explicit or imminent. Pls.' Opp'n at 6–7. But Plaintiffs overlook that *McBurney* requires more than a special relation to enforcement; to be sued pursuant to the *Ex parte Young* exception, an Attorney General must have threatened, or commenced, enforcement proceedings. 616 F.3d at 402 ("[E]ven were we to find a special relation, we cannot apply *Ex parte Young* because the Attorney General has not acted or threatened to act."). Plaintiffs, though, do not allege that they will violate the law, and conversely, identify no allegation that Attorney General Brown has threatened enforcement, initiated proceedings, undertaken an investigation, or otherwise taken any action toward enforcing the Act against them.

Nor does the Attorney General's guidance, which advises state and local law enforcement on their role in federal immigration enforcement, establish that the Attorney General has threatened or is about to commence enforcement proceedings. *See* Pls.' Opp'n at 6. Advising state and local officials regarding their obligations under state law is a routine function of the Attorney General.

*See* Md. Code Ann., State Gov't § 6-106(b). Plaintiffs do not point to any specific language in the guidance that they contend constitutes a threat to enforce the Act against them. They likewise fail to cite any case holding that an attorney general's mere issuance of guidance setting out responsibilities under state law satisfies *Ex parte Young*'s threat-of-enforcement requirement.

*Ex parte Young* itself makes plain that the narrow exception covers only suits for prospective relief against state officers who "are clothed with some duty in regard to the enforcement of the laws of the state, *and* who threaten and are about to commence proceedings." 209 U.S. at 156 (emphasis added). No lower court decision can dispose of this requirement. In any event, Plaintiffs' reliance on *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908 (9th Cir. 2004), and *Mobil Oil Corp. v. Attorney General of Virginia*, 940 F.2d 73 (4th Cir. 1991), does not support their contention that the Attorney General's statutory enforcement authority, without more, satisfies *Ex parte Young*. *See* Pls.' Opp'n at 6. In *Planned Parenthood*, a decision of the Ninth Circuit that is not binding in this Circuit, the Court found a sufficient threat of prosecution where a physician alleged a clear intention to continue performing abortions in violation of an Idaho statute, exposing him to potential criminal prosecution and imprisonment. 376 F.3d at 916 ("Weyhrich has stated his clear intention to continue to perform abortions for his patients, of whom some are minors."). Plaintiffs make no such allegation that they intend to violate state law in this action.

*Mobil Oil* likewise does not resolve the distinct *Ex parte Young* issue presented here. In *Mobil Oil*, before the District Court, "[t]he Commonwealth [] moved to dismiss the complaint, on grounds that [the suit] is barred as to the Commissioner [of Agriculture and Consumer Services] by the eleventh amendment to the United States Constitution, and that it fails to raise a 'case or controversy' with respect to the Attorney General, as required by article III to the Constitution."

*Mobil Oil Corp. v. Attorney Gen. of Va.*, 747 F. Supp. 1173, 1175 (E.D. Va. 1990), *judgment reversed by Mobil Oil*, 940 F.2d 73 (4th Cir. 1991). The District Court held that the Commissioner was not a proper defendant under *Ex parte Young* because, among other reasons, "there [wa]s no suggestion that Commissioner has *ever* enforced or threatened to enforce *any* [of the challenged law's] provisions, including the mere recordkeeping ones." 747 F. Supp. at 1179. Neither the District Court nor the Fourth Circuit considered any argument that the Attorney General was not a proper defendant under *Ex parte Young*. Thus, *Mobil Oil* is not on point precedent on the issue presented in this case. By contrast, the specific issue of whether an Attorney General was a proper defendant was addressed in *McBurney*, and the Circuit there made clear that there must be commenced or threatened proceedings to bring such an action. 616 F.3d at 402.

Finally, Plaintiffs bemoan that state officials "could dodge pre-enforcement challenges," Pls.' Opp'n at 6, but the *Ex parte Young* exception is by design limited to officers of the state "who threaten and are about to commence proceedings." 209 U.S. at 156. As the Fourth Circuit explained in *McBurney*, "[t]he special-relation requirement protects a state's Eleventh Amendment immunity while, at the same time, ensuring that, . . . '[any] federal injunction will be effective with respect to the underlying claim.'" 616 F.3d at 399 (quoting *S.C. Wildlife Fed'n v. Limehouse*, 549 F.3d 324, 333 (4th Cir. 2008)). Plaintiffs' policy concerns cannot substitute for doctrinal requirements. Their claims should be dismissed.

**D. Plaintiffs Cannot Assert the Federal Government's Intergovernmental Immunity Interests.**

Plaintiffs continue to incorrectly press the federal government's immunity interests as their own. Pls.' Opp'n at 17–18. Yet, 8 U.S.C. § 1357(g)(1)(B), which Plaintiffs cite to analogize themselves to federal contractors, says only that federal law does not require a formal agreement for an officer or employee of a State or subdivision of a State to communicate or cooperate with

the Attorney General on immigration enforcement. Section 1357(g)(1)(B) does not transform state officials into federal agents, instrumentalities of the federal government, or federal contractors, nor does it confer any legal interest in the federal government's immunity from state regulation. That Maryland law bars state and local law enforcement agencies from entering into or maintaining formal 287(g) agreements with U.S. Immigration and Customs Enforcement, *see* Md. Code Ann., Crim. Proc. § 5-104.1, further underscores that Plaintiffs do not approximate federal contractors.

Plaintiffs' asserted interest in "better, more efficient enforcement," Pls.' Opp'n at 17, does not establish any legal right of Plaintiffs to bring a claim to purportedly vindicate the federal government's intergovernmental immunity interests. *CoreCivic, Inc. v. Governor of New Jersey*, 145 F.4th 315 (3d Cir. 2025), which Plaintiffs cite, Pls.' Opp'n at 18, is inapposite because claims in that case were brought by a plaintiff who had "[s]ince 1996, . . . contracted with the federal government to run a private-immigration detention center." *Id.* at 319. As state officers whose duties and responsibilities are defined by the Maryland General Assembly, Plaintiffs therefore cannot bring an intergovernmental immunity claim in the shoes of the federal government.

## II. Plaintiffs' Preemption Claims Fail as a Matter of Law.

Even if the Court reaches the merits of Plaintiffs' preemption claims, they fail as a matter of law for the reasons set out in Defendants' motion and below.

### A. Sections 1373 and 1644 Do Not Expressly Preempt the Community Trust Act.

Under a straightforward application of *Murphy v. National Collegiate Athletic Association*, 584 U.S. 453 (2018), 8 U.S.C. §§ 1373 and 1644 are not valid preemption provisions. Defs.' MTD at 20–21. Defendants' motion identifies multiple decisions from courts so holding. *See id.* Without grappling with the reasoning of *Murphy* or the precedents applying that decision to Sections 1373 and 1644, Plaintiffs assert conclusorily that these federal provisions do not act upon the states, but instead "create a federal right in all public officials to give information to ICE."

Pls.' Opp'n at 16. Yet, Plaintiffs fail to explain how the statutory text—which, by its text, prohibits state and local governments from restricting information exchange—confers any federal right on state public officials acting in their official capacities. *Cf. Johnson v. Hurtt*, 893 F. Supp. 2d 817, 837–40 (S.D. Tex. 2012) (rejecting argument that Sections 1373 and 1644 confer individual enforceable federal rights). Nothing in the provisions' language establishes an entitlement to disclose information notwithstanding state law duties governing those officials. Treating these federal provisions as creating such federal rights would effectively permit Congress to direct state officials' performance of their governmental duties, raising the very anticommandeering concerns that Plaintiffs' reading fails to address.

Plaintiffs also contend that Sections 1373 and 1644 require the sharing of release dates. Pls.' Opp'n at 16. But the text of Sections 1373 and 1644 do not contain this requirement, Plaintiffs cite no case law supporting this interpretation, and Plaintiffs fail to engage with the decisions cited in Defendants' motion to dismiss holding that these provisions cover only a person's legal classification under federal law. Defs.' MTD at 21–22. Plaintiffs' undeveloped federal rights theory and unsupported interpretation of "information regarding" immigration status fail to establish that Sections 1373 and 1644 expressly preempt the Community Trust Act.

**B. The Community Trust Act is Not Obstacle Preempted.**

Plaintiffs wrongly focus their obstacle preemption arguments on whether the Act might make federal immigration enforcement efforts more difficult, proposing a but-for standard, under which any state law that makes "the enforcement of federal immigration law decidedly more difficult" is necessarily an unconstitutional obstacle. Pls.' Opp'n at 11. This is not the governing obstacle preemption test. Rather, as set out in Defendants' motion, Defs.' MTD at 23, obstacle preemption requires a showing that state law stands as an obstacle to the accomplishment and execution of federal law's full purposes and objectives. And the Fourth Circuit instructs that "a

court should not find conflict preemption unless preemption was 'the clear and manifest purpose of Congress.'" Defs.' MTD at 23 (quoting *N. Va. Hemp & Agric. v. Virginia, LLC*, 125 F.4th 472, 493 (4th Cir. 2025)). Plaintiffs have not made this showing. Moreover, *Printz v. United States*, 521 U.S. 898 (1997), refutes the "but for" standard Plaintiffs set out in their opposition. In *Printz*, the Supreme Court rejected the notion that the federal government may compel state participation in administering or enforcing a federal regulatory program simply because doing so may be the preferred means of advancing federal policy. *Id.* at 931–32 (balancing factors such as efficiency is "inappropriate" where "it is the whole *object* of the law to direct the functioning of the state executive, and hence to compromise the structural framework of dual sovereignty").

Plaintiffs also falter in claiming that it "obviously does not violate the anti-commandeering doctrine" to preempt a state law that "makes it more difficult for the federal government to govern individuals." Opp'n at 12. *Printz* established otherwise, holding that the federal government may not conscript state officials into administering federal regulatory programs even where such aid would help the federal government to enforce a program that concerns individuals. *See Printz*, 521 U.S. at 933 (striking down a federal statute that attempted to force state law enforcement to conduct background checks as part of a federal firearm regulatory program). The Supreme Court explained that even ministerial requirements impermissibly place state officials in the position of implementing and bearing responsibility for federal policy. *See id.* at 930–31. *Murphy* counsels the same. There, the Supreme Court distinguished between permissible federal regulation of individuals and impermissible regulation of States. 584 U.S. at 475–78. The Supremacy Clause does not authorize Congress to circumvent the anticommandeering principle simply by framing the state law's displacement as necessary to make federal regulation of individuals more effective.

*See Printz*, 521 U.A. at 931–32, 935. Plaintiffs' arguments overlook the federalism interests that limit the circumstances under which federal law may displace state regulation of state officials.

Plaintiffs' arguments regarding *GenBioPro v. Raynes*, 144 F.4th Cir. 258 (4th Cir. 2025), are likewise misplaced. Plaintiffs contend that, unlike in *GenBioPro*, the federal statutory purposes here are clear. Pls.' Opp'n at 13. But any clarity regarding Congress's objectives for federal immigration enforcement does not itself establish that Congress intended to displace state laws governing state officials or require that state officials assist in federal enforcement. And *GenBioPro* cautions that courts should not infer a "radical change in the federal-state balance" absent a "much clearer voice" from Congress. 144 F.4th at 277. Plaintiffs have identified no such clear congressional directive with regard to displacing state law.

Federal authority over immigration, *see* Pls.' Opp'n at 15, also does not resolve the obstacle preemption inquiry here. *Arizona v. United States*, 567 U.S. 387 (2012), recognizes that the federal government has broad authority over immigration, *id.* at 394, but does not establish that Congress intended to displace every state law that might indirectly touch immigration. Here, the Community Trust Act does not regulate immigration or restrict federal immigration authorities; it regulates Maryland's state and local law officials and the circumstances in which state law authorizes them to participate in federal immigration enforcement. The federal government's authority over immigration does not establish a concomitant power to dictate the duties of state officers.

Finally, Plaintiffs argue that this Court should not apply the standard presumption against preemption. Opp'n at 18–19. But whether the presumption applies or not, under *Murphy*, Congress cannot use preemption to regulate the states themselves. 584 U.S. at 472.

**C. The Community Trust Act Is Not Impossibility Preempted.**

Plaintiffs' opposition to dismissal also does not resolve the central defect with their impossibility preemption claim. As set out in Defendants' motion to dismiss, Defs.' MTD at 25–

26, impossibility preemption exists where compliance with both state and federal law is impossible. *English v. General Electric Co.*, 496 U.S. 72, 79 (1990). Plaintiffs still have not established any impossible conflict.

Plaintiffs maintain that such a conflict exists because, in their view, the Community Trust Act compels Maryland officials to commit criminal harboring. Pls.' Opp'n at 15–16. This claim is based on the mistaken premise that an officer who releases an individual in the presence of any federal officer waiting to assume custody, even when the state official played no role in coordinating the federal officer's presence, necessarily effects a "de facto transfer." *Id.* But, as explained in Defendants' motion to dismiss, Defs.' MTD at 12–13, the Act does not require Maryland officials to conceal individuals, transport them away from waiting federal officers, or take affirmative steps to prevent federal apprehension. It instead regulates when state officials may aid in the transfer of individuals to federal authorities by, for example, providing advance notification of a release.

Plaintiffs' bald assertion that the Community Trust Act is designed to shield individuals from removal is unfounded. Pls.' Opp'n at 15. The Act applies exclusively to state and local governmental actors and governs when and how Maryland's state and local law officials must, may, or may not assist in federal immigration enforcement—it does not require harboring or interference in the efforts of federal immigration authorities.

## III. The Community Trust Act Does Not Regulate Federal Immigration Authorities.

Finally, Plaintiffs inaccurately contend that the Community Trust Act is a regulation of the federal government because it "places a severe burden on the federal government's choice to have a largely civil immigration system." Pls.' Opp'n at 18. However, that characterization confuses regulation of federal officials with regulation of Maryland officials. The Community Trust Act

regulates only Maryland's state and local law enforcement officers and the circumstances in which they may participate in federal enforcement; it does not impose qualifications on federal officials, who remain free to unilaterally enforce federal immigration law in Maryland.

Plaintiffs likewise misguidedly insist that the Community Trust Act interferes with federal immigration policy. Pls.' Opp'n at 18. But the upshot of Plaintiffs' argument is that a state may regulate its own officers' participation only on the federal government's preferred terms. That is not regulation of the federal government. *See, e.g.*, *McHenry Cnty. v. Raoul*, 44 F.4th 581, 592–93 (7th Cir. 2022) (Illinois law that barred state and local law enforcement from entering into or maintaining cooperative agreements for immigration detention "directly regulates only State and local entities and law enforcement—not the federal government" and thus does not unconstitutionally regulate the federal government).

Nor do *CoreCivic, Inc. v. Governor of New Jersey*, 145 F.4th 315 (3d Cir. 2025), or other cases concerning state bans on private detention facilities counsel otherwise. Those cases concerned willing private contractors (not state officials with duties and responsibilities set by state law) who were purportedly prevented fully by state law from aiding the federal government. Here, the State of Maryland has specified through the Community Trust Act how it is willing to aid the United States in the sphere of federal immigration enforcement, but Plaintiffs demand more. Yet, the Supremacy Clause does not give the federal government the right to direct the duties of state officers or require Maryland to make its personnel available as an alternative source of hands for carrying out federal functions. The Community Trust Act does not unconstitutionally regulate the federal government.

**CONCLUSION**

For the foregoing reasons, the Plaintiffs' claims should be dismissed.

Dated: September 24, 2026

Respectfully submitted,

**ANTHONY G. BROWN**
ATTORNEY GENERAL OF MARYLAND

*/s/ Virginia A. Williamson*
Virginia A. Williamson (D. Md. Bar No. 31472)
Adam Kirschner (D. Md. Bar No. 31767)
Lauren Gorodetsky (D. Md. Bar No. 32172)
*Assistant Attorneys General*
Office of the Attorney General
200 Saint Paul Place
Baltimore, MD 21202
(410) 576-6584
vwilliamson@oag.maryland.gov

*Counsel for Defendants*